## KUDER CITRUS PULP CO.
### v.
## UNITED STATES.
### Civ. A. No. T–2170.

United States District Court
S. D. Florida, Tampa Division.

March 13, 1953.

John J. Trenam, of Fowler, White, Gillen, Yancey & Humkey, Tampa, Fla., for plaintiff.

Herbert S. Phillips, U. S. Atty., and Matt M. O'Brien, Asst. U. S. Atty., Tampa, Fla., for defendant.

WHITEHURST, District Judge.

### Findings of Fact

1. Plaintiff is a corporation organized and existing under the laws of the State of Florida and having its principal place of business in the County of Polk, State of Florida.

2. For its taxable years ended October 31, 1942, October 31, 1943, October 31, 1945 and October 31, 1946, plaintiff filed Federal excess profits tax returns with the Commissioner of Internal Revenue, which returns reflected taxes payable as shown in the following schedule:

| Fiscal Year Ended | Excess Profits Tax Liability |
|---|---|
| October 31, 1942 | $9,246.34 |
| October 31, 1943 | 0 |
| October 31, 1945 | 8,605.83 |
| October 31, 1946 | 4,341.30 |

3. The excess profits taxes due by plaintiff as shown in the foregoing paragraph were duly paid by plaintiff to the Commissioner of Internal Revenue.

4. On or about the 10th day of September, 1943, plaintiff filed with the Com-

missioner of Internal Revenue application for relief under Section 722 of the Internal Revenue Code, 26 U.S.C.A., with respect to its fiscal year ended October 31, 1942. Application for relief under Section 722 was similarly filed by plaintiff on or about the 24th day of October 1946 with respect to its fiscal year ended October 31, 1943. Applications for relief under Section 722 were similarly filed by plaintiff on or about the 7th day of April, 1949 with respect to its fiscal years ended October 31, 1945 and October 31, 1946.

5. Thereafter, the Commissioner of Internal Revenue, as a result of an audit of plaintiff's excess profits tax returns for the years involved in this case, determined that plaintiff had understated its excess profits net income for the years involved in the returns filed by plaintiff for those years. At or about the same time, it was determined by the Commissioner of Internal Revenue that plaintiff was entitled, under Section 722 of the Internal Revenue Code, to increases in the excess profits credits reflected in the tax returns filed by plaintiff with respect to the years involved in this case. Neither the plaintiff nor the defendant here questions either that excess profits net income was understated as determined by the Commissioner or that plaintiff was entitled to increased excess profits credits as determined by the Commissioner.

6. Thereafter, the Commissioner of Internal Revenue made a computation of plaintiff's excess profits taxes for the years involved giving partial effect to the applicable adjustments. In this computation, excess profits net income for each of the years involved was increased by the amount by which such excess profits net income had been understated in plaintiff's return for such year, but no adjustments were made to give plaintiff the advantage of the increased excess profits credits which the Commissioner had determined to be allowable to plaintiff. This computation indicated that but for allowance of relief under Section 722 of the Internal Revenue Code, deficiencies

of excess profits taxes would have been payable by plaintiff to the Commissioner. Such deficiencies which would have existed in the absence of allowance of relief under Section 722 of the Internal Revenue Code, hereinafter referred to as "apparent deficiencies", were determined by the Commissioner to be as follows:

| Fiscal Year Ended | Apparent Deficiency |
|---|---|
| October 31, 1942 | $8,601.63 |
| October 31, 1943 | 6,035.41 |
| October 31, 1945 | 7,472.44 |
| October 31, 1946 | 876.42 |

The above stated "apparent deficiencies" were never assessed as such by the Commissioner of Internal Revenue against the plaintiff.

7. At the time of his determination of "apparent deficiencies", as aforesaid, the Commissioner made a determination of plaintiff's excess profits taxes for the years involved giving full effect to all applicable adjustments. In this determination, excess profits net income for each of the years involved was increased by the amount by which it had been understated in plaintiff's return for such year, and the excess profits credit for each of the years involved was increased to the amount determined by the Commissioner, as aforesaid, to be allowable with respect to such year. This determination indicated a deficiency payable by plaintiff to the Commissioner and overassessments payable by the Commissioner to plaintiff as shown in the following schedule:

| Fiscal Year Ended | Deficiency | Overassessment |
|---|---|---|
| October 31, 1942 | $2,866.84 | |
| October 31, 1943 | 0 | 0 |
| October 31, 1945 | | $1,152.54 |
| October 31, 1946 | | 565.02 |

The deficiency reflected in the immediately foregoing schedule was duly assessed by the Commissioner against plaintiff and was paid by plaintiff to the Commissioner. The overassessments re-

flected in the immediately foregoing schedule were duly allowed and scheduled by the Commissioner of Internal Revenue and have been paid by the Commissioner of Internal Revenue to the plaintiff. The said deficiency and the said overassessments are not questioned here by either the plaintiff or the defendant.

8. At or about the time the above deficiency was assessed and the above overassessments were allowed, as aforesaid, the Commissioner assessed interest against plaintiff computed on the "apparent deficiencies" determined as aforesaid. The amounts of the interest thus assessed were as follows:

| Fiscal Year Ended | Interest |
| --- | --- |
| October 31, 1942 | 2,591.07 |
| October 31, 1943 | 1,371.28 |
| October 31, 1945 | 2,031.07 |
| October 31, 1946 | 188.08 |

The interest assessed as above stated was duly paid by plaintiff to the Commissioner, following which plaintiff filed claims for refund with Commissioner for the amounts of such interest. On or about January 11, 1952, defendant denied the aforesaid claims for refund.

9. The sole question involved in this case is whether or not plaintiff is entitled to refund of the interest on "apparent deficiencies" assessed against and paid by it as aforesaid.

10. The parties have agreed that if interest was owing, the amounts assessed were correctly determined and that if interest was not owing such amounts should be refunded to plaintiff.

Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. Plaintiff has overpaid and is entitled to refund of the interest assessed against it by the Commissioner, the amounts of said interest being shown under the statement of facts.

Opinion

The precise issue here involved has been before the courts on two previous occasions. Henry River Mills Company, v. U. S., 1951, 96 F.Supp. 477, 119 Ct.Cl. 350; Premium Oil Refining Co. of Texas v. United States, D.C.N.D.Tex., 107 F. Supp. 837. In both of those cases, judgment was rendered for the taxpayer. I concur in the conclusion reached by the Court in each of those cases.

At the trial of the instant case, counsel for defendant argued that "deficiencies" of plaintiff's excess profits taxes existed from the date of filing of the applicable excess profits tax returns until the date, several years thereafter, when the Commissioner finally granted relief to plaintiff under Section 722 of the Internal Revenue Code and that the relief granted under Section 722 did not operate retroactively to eliminate or reduce the "deficiencies" of excess profits taxes which existed at the date of filing of the applicable excess profits tax returns. Counsel for plaintiff contested this position, urging that there were no "deficiencies" or that they were smaller in amount than those upon which interest was computed, and that the relief granted under Section 722 was applicable retroactively to the date of filing of the excess profits tax returns.

In my opinion, this case turns on the latter proposition. It seems obvious that if the Section 722 relief operated retroactively, as contended by counsel for plaintiff, there were no actual "deficiencies" of the amount determined by the Commissioner and the assessment of interest thereon was improper. I am of the opinion that such relief did operate retroactively.

The excess profits tax law, as it existed during the years here involved, was founded upon the theory that corporate excess profits resulting from the economic dislocations of war should be subjected to an extremely high rate of tax. Under the law, the excess profits thus to be taxed to a corporation consisted of the annual profits which were in excess

of a standard established for that corporation, which standard was considered to represent the normal profits of such corporation. Ordinarily, this standard, termed "excess profits credit", was to be computed according to either of two basic formulas set out in the law. Recognizing, however, that in unusual cases neither of these formulas would yield an excess profits credit which would represent a fair standard of normal profits, Congress enacted Section 722 of the Internal Revenue Code giving to the Commissioner power to increase the excess profits credit of a corporation where certain conditions existed and where justice required an upward revision of such credit to make it a fair standard of normal profits.

It should be clear from the above that the profits of a corporation which were subject to excess profits taxes were arrived at, in any year, by subtracting the excess profits credit of the corporation for that year from its profits for that year. If, in its return for any year, a corporation understated its profits, its excess profits tax was understated and if, in any year, the corporation understated its excess profits credit, its excess profits tax was overstated.

Both of the above types of understatements occurred with respect to plaintiff. In its excess profits tax returns for the years involved, plaintiff's profits were understated. At the same time, the excess profits credits of plaintiff, as reported in its returns, were too low. This latter fact was established beyond question by the Commissioner when he granted relief to taxpayer in the form of increased excess profits credits under Section 722. Except as regards one of the years involved, the increased excess profits credits completely offset the understatements of profits made by plaintiff in its returns. The result, as regards two of the years, was a final determination by the Commissioner that for such years plaintiff was entitled to—and plaintiff was actually paid—refunds of excess profits taxes. Despite this fact, the Com-

missioner has assessed interest as heretofore stated.

It is now urged by counsel for defendant that the Commissioner's determination of interest was perfectly proper. It is contended, in effect, that we should recognize the understatements of profits from the very dates upon which the applicable excess profits tax returns were filed but that we should ignore the fact that plaintiff's excess profits credits reported in those same years were likewise understated in the returns in question. In other words, it is argued that the final relief granted by the Commissioner under Section 722 should not be recognized as of the dates of filing of the applicable returns.

█ I am unable to agree with this position. In my view, the allowance of Section 722 relief by the Commissioner demonstrates beyond question that plaintiff's excess profits credits for the years involved were too low from the very moment the applicable tax returns were filed. These credits did not become too low by virtue of the allowance of relief by the Commissioner. That allowance was simply recognition of a fact which already existed. The credits were too low from the very beginning and consequently did not constitute a fair standard for determining the excess profits to be taxed away from plaintiff. In other words, once the Commissioner's determination of appropriate relief under Section 722 was made, such relief related back and took effect as of the time the affected tax returns were filed, i. e. *nunc pro tunc.*

Counsel for defendant point to Section 722(d) of the Internal Revenue Code as justifying their position. That Section provides, in effect, that a corporate taxpayer must file its excess profits tax return and pay its tax without reference to any possible relief under Section 722. In my view, that Section has nothing whatsoever to do with the question of whether or not interest may be assessed upon a deficiency which would exist except for the allowance of relief under Section 722.

The Section does no more than recognize the difficulties inherent in determining the amount of relief properly allowable under Section 722. It does no more than notify a taxpayer that it cannot take advantage of Section 722 on the basis of its own determination but must await determination of available relief by the Commissioner. The Section certainly does not forbid retroactive application of the relief when determined by the Commissioner.

Counsel for defendant argue that this case is controlled by the decision of the United States Supreme Court in Manning v. Seeley Tube & Box Co., 1949, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346. There are two answers to this argument. First, the Seeley Tube case, supra, was decided prior to both the Henry River Mills case, supra, and the Premium Oil Refining Co. of Texas case, supra, yet it was not considered to be controlling in either of those cases which, as previously mentioned, held for the taxpayers involved under circumstances almost identical with those here present. In the second place, the Seeley Tube case, supra, involved the carry-back of a net operating loss whereas the instant case involves application of Section 722 relief. The situations involved in that case and this are in no wise analogous. As indicated by the Court of Claims in the case of Rodgers v. U. S., 1952, 108 F.Supp. 727, 123 Ct.Cl. 779, carry-back relief depends upon economic events which have not occurred at the time the applicable tax return is filed. Section 722 relief, on the other hand, depends solely upon economic events which have occurred prior to the time the applicable excess profits tax return is filed. To put it otherwise, in a case where Section 722 relief is properly available, it is available upon the basis of facts and law which actually existed when the applicable excess profits tax return was filed. This is not the case with respect to carry-back relief. That the two situations are entirely different and require different treatment seems obvious.

On the basis of the foregoing reasoning and the reasoning contained in the Henry River Mills and the Premium Oil Refining Co. of Texas cases, supra, it is concluded that plaintiff is entitled to recovery of the interest assessed by the Commissioner as set out under the statement of facts.

Therefore, the Clerk is directed to enter judgment for the plaintiff in the amount of $6,181.50, with interest and costs as provided by law.