**LINN MILLS**
v.
**UNITED STATES.**
No. 123-52.

United States Court of Claims.
Decided June 8, 1954.

John C. Reid, Washington, D. C., Irvins, Phillips & Barker, Washington, D. C., were on the brief, for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief, for defendant.

Before JONES Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff sues to recover $1,082.63, plus interest, claiming that such amount represents interest illegally collected and retained on an apparent, but not real excess profits tax deficiency of $3,083.11 for 1941, which deficiency was refunded with $1,271.81 additional principal after application of section 722 of the Internal Revenue Code. 54 Stat. 986, as amended, 26 U.S.C. § 722, Supp. IV 1940 Ed., repealed by Act of Nov. 8, 1945, 59 Stat.

568. It is plaintiff's position that it is entitled to the refund of interest as well as the principal. The facts as stipulated by the parties are summarized below.

Plaintiff filed its excess profits tax return for 1941 on March 15, 1942, showing an average base period net income of $66,051.23, computed without regard to section 722, which produced a credit against taxable income of $62,748.07, with a resulting excess profits tax liability of $95,102.03. This amount was paid in four installments during 1942.

An application for determination of its profits tax under section 722 of the Internal Revenue Code was filed by the taxpayer on June 24, 1943, claiming a constructive average base period net income of $143,354.09. On July 27, 1945, plaintiff was informed by Revenue officials in the field that it was proposed to reject the claim for the determination of the tax under section 722, and to assert a deficiency in excess profits tax for 1941 in the amount of $3,562.13. After conferences between plaintiff and defendant, the plaintiff requested the defendant to refer the entire matter to the Technical Staff, Atlantic Division, Bureau of Internal Revenue. Plaintiff was advised on September 26, 1946, that jurisdiction for handling determinations under section 722 was under the Excess Profits Tax Council which had been formed in April 1946, and its section 722 claim was accordingly returned to the Excess Profits Tax Council.

The Technical Staff, however, continued consideration of the proposed standard issues [1] deficiency and eventually determined a standard issues deficiency of $3,083.11. On December 23, 1947, plaintiff filed an "Offer of Waiver of Restriction on Assessments and Collection of Deficiency Tax" on that amount, specifically reserving its rights under section 722, because there was no ground for contesting that deficiency until the Excess Profits Tax Council rendered its decision on the section 722 claim.

On January 20, 1948, the Excess Profits Tax Council decided the plaintiff's case and reached the conclusion that the taxpayer qualified in every way for relief under section 722(b) (4) of the Internal Revenue Code, and accordingly the Council granted a constructive average base period net income of $75,219.48, which produced a credit thereunder of $71,458.51. The plaintiff's tax liability resulting therefrom was a deficiency in income tax of $1,350.02 and an overpayment of excess profits tax of $4,354.92. Plaintiff was notified of this by letter dated March 11, 1948.

In the meantime, on February 27, 1948, the standard issues deficiency of $3,083.11, referred to, supra, together with interest computed thereon of $1,082.63, was assessed against the taxpayer. Both of these sums were paid on March 11, 1948, the same date of the letter from the Revenue Agent in charge advising plaintiff of the January 20, 1948, decision of the Excess Profits Tax Council, and that the determination of its excess profits tax after the application of section 722 resulted in an overpayment of excess profits tax in the sum of $4,354.92 and a deficiency in income tax of $1,350.02.

Following the filing on March 29, 1948, of a waiver of restrictions on assessments and collections of the deficiency in tax and acceptance of the overpayment by plaintiff, the Commissioner issued a formal notice to plaintiff on April 29, 1948, advising it of the overpayment of $4,354.92.

This overpayment of $4,354.92 was thereafter refunded or credited to plaintiff but the Commissioner did not refund the interest of $1,082.63 paid in connection with the February 27, 1948, assessment referred to above. Plaintiff's claim for this amount was denied and it is for this amount that suit is brought here.

The arguments advanced by defendant in support of the Commissioner's action regarding the $1,082.63 collected and re-

---

1. The term "standard issues" is used to cover all statutory adjustments to income or deductions with the exception of those required by section 722.

tained as interest here, are substantially the same as those urged in Koppers Co., Inc., v. United States, 126 Ct.Cl. 847, 117 F.Supp. 181, certiorari granted 74 S.Ct. 775. While it is true that in Koppers Co., Inc., supra, there had been no assessment nor payment of the potential standard issues deficiency, for reasons which appear below, we do not believe that there is any substantial factual or legal divergence sufficient to warrant a different result here.

■ The parties have stipulated that the Excess Profits Tax Council decided on January 20, 1948, that plaintiff was entitled, under section 722, to a *constructive* average base period net income of $75,219.48, rather than the $66,051.23 shown in the original return; and that when this *constructive* average base net income was employed in the determination of the tax as required by the statute, plaintiff had overpaid its excess profits tax by $4,354.92. Implicit in this decision of the Excess Profits Tax Council of January 20, 1948, is a finding that the use of the average base period net income " * * * [resulted] in an excessive and discriminatory tax * * * " and that the taxpayer had " * * * [established] what would be a fair and just amount representing normal earnings * * * ."[2] Under such circumstances section 722 of the Code expressly requires that:

> " * * * the tax *shall* be determined by using such *constructive* average base period net income *in lieu of* the average base period net income otherwise determined under this subchapter." [Emphasis supplied.]

The only pertinent factual difference between this case and the Koppers case, supra, is that the Commissioner formally assessed and collected a standard issues deficiency, even though the Excess Profits Tax Council had already decided that section 722 was applicable and that plaintiff was entitled to a constructive average base period net income sufficient to give

it an excess profits tax credit which completely eliminated the "potential" deficiency. It seems clear from the stipulated facts in the instant case that the assessment and payment of the "potential" deficiency on which the interest here in question was collected, occurred, without protest, merely because the standard issues determination and that of section 722 applicability were administratively separate. We do not believe that such accidental and wholly fortuitous circumstances warrant distinguishing the Koppers case, supra, from this case. Accordingly, we hold that Koppers Co., Inc. v. United States, supra, is applicable and controlling in this case. In view of the Koppers decision and rationale it is unnecessary to answer defendant's contentions in detail. In that case we said, beginning on page 854 of 126 Ct.Cl. on page 185 of 117 F.Supp.:

> "It [section 722] affords an alternative formula for determining the amount to be exacted when the economic facts of a particular corporation will not fit properly into the 'average base period net income' mechanism. The result sought is a fair and equitable tax *in lieu of,* not *in mitigation of,* an excessive and discriminatory one. It follows therefore that where the factual and procedural requirements of Section 722 have been met, the Commissioner must take cognizance of that section in 'determining' a 'deficiency,' as those terms are used in Sections 292(a) and 271.[3] In so doing the constructive average base period net income must of necessity be used in arriving at the basis on which interest is computed as for the determination and assessment of the tax itself. Once Section 722 is, on the facts established, brought to bear on an appropriate situation it is an integral part of the applicable tax law and cannot be employed eclectically by the Commissioner of Internal Revenue. * * * "

---

2. 26 U.S.C. § 722.

3. §§ 292(a) and 271 of the Code.

We believe that section 722 was designed so as not to exact from those corporations that qualify thereunder more than the true tax based upon a fair standard of normal profits. The tax was to be determined on the well-established annual basis concept which requires the tax to be predicated upon the facts in existence and economic events occurring in the particular taxable year. Therefore, when applicable, section 722 is in reality an alternative means of determining the excess profits tax due for the year. The whole section was designed to collect the correct and fair tax that was due for the year based upon the facts in existence in that year. Because of administrative difficulties it was infeasible, if not impossible, to actually decide *during* the particular year, whether section 722 was applicable. Consequently, solely because of this administrative difficulty the decision on the applicability of section 722 was postponed. However, the economic events giving rise to tax incidents occurring in subsequent taxable years are not considered in deciding whether or not section 722 is applicable or in arriving at the correct tax for the year.

 This brings us to what we consider the crux of this problem of interest on pure potential deficiencies, and on "potential" or temporary deficiencies which are assessed and collected but subsequently eliminated by the application of section 722. We believe that the defendant has obscured the real issue of whether the decision of the applicability of section 722 should be applied retroactively for all purposes, that is, just as though the decision had been made in the taxable year. We believe that it should be applied retroactively for all purposes because, as stated above, section 722 is in reality an alternative means of determining the true and correct tax due for the year. When so applied, the difference between the true and correct excess profits tax and what has been paid is the adjustment to be made by way of refund or deficiency. Under section 292(a), the standard provision allowing interest on deficiencies,

the Government is entitled to interest on any real deficiency in excess profits tax, and by reason of section 3771(g) the taxpayer is not entitled to interest for years beginning prior to January 1, 1942, or for years thereafter until one year after the filing of its 722 application or September 16, 1945, whichever is the later.

We deem it of no consequence, insofar as the taxpayer's right to a refund of interest on a standard issues deficiency is concerned when the deficiency was partially or wholly eliminated by the application of section 722 to the same year, that due to fortuitous circumstances the standard issues deficiency was assessed and collected with interest thereon before the Commissioner decided, or notified the taxpayer of his decision, to apply section 722.

If the taxpayer incorrectly computed its excess profits tax, the Commissioner could have obviously assessed and collected a deficiency therefor with interest thereon. However, once it is determined that section 722 is applicable, the Commissioner must apply that section retroactively to the year in question and refund, insofar as excess profits taxes are concerned, the difference between the true and correct tax determined to be payable to the Government and the aggregate of the excess profits tax collected for that year plus any interest collected thereon.

We agree with the well reasoned decision of Kuder Citrus Pulp Co. v. United States, D.C.S.D. Fla., 117 F.Supp. 395 at page 398, where the court stated:

"In my view, the allowance of Section 722 relief by the Commissioner demonstrates beyond question that plaintiff's excess profits credits for the years involved were too low from the very moment the applicable tax returns were filed. These credits did not become too low by virtue of the allowance of relief by the Commissioner. That allowance was simply recognition of a fact which already existed. The credits were too low from the very begin-

ning and consequently did not constitute a fair standard for determining the excess profits to be taxed away from plaintiff. In other words, once the Commissioner's determination of appropriate relief under Section 722 was made, *such relief related back and took effect as of the time the affected tax returns were filed,* i. e. *nunc pro tunc.*" [Emphasis supplied.]

The defendant contends that the rationale of the Supreme Court in Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346, in its holding that interest on a deficiency was not abated when the deficiency itself was abated by the carryback of a net operating loss, is applicable to this case. We do not agree, for the reasons related in Koppers, supra, and those about to be given. The defendant contends that no distinction should be made between section 3771(e), the section discussed by the Supreme Court in the Manning case, supra, and section 3771(g) insofar as the Government's right to retain interest is concerned. However, this ignores the basic difference between those two sections. No interest on an over-payment resulting from the carryback of a net operating loss has ever been allowed a taxpayer under section 3771(e) because the original tax for the year in question was the correct tax which had been assessed and collected based upon economic events that occurred and were in existence in that taxable year. The adjustment in tax resulted from facts and events occurring in subsequent years which are totally irrelevant in resolving the question of the tax liability of the taxpayer as of the end of the particular taxable year. The amount determined to be due the Government as of the end of that year was unquestionably due at that time.

Section 3771(g) and its counterpart section 292(b) were designed for a different purpose and thus have a different effect. The disallowance of in-

terest altogether on overpayments and deficiencies under those two sections was only temporary to allow an opportunity to establish administrative procedures to administer fairly and effectively the excess profits tax law.[4] As indicated above, interest is allowed taxpayers on overpayments, and to the Government on deficiencies, resulting from the application of section 722 for taxable years beginning after December 31, 1941, for any period after one year from the filing of the application for section 722 relief, or September 16, 1945, whichever is the later.

Also as opposed to the facts in Manning v. Seeley Tube & Box Co., supra, it is not so clear in the instant case as to be beyond controversy that the taxpayer must " * * * compute its [correct] tax * * *," without regard to section 722, at the time it files its return, because this section continues " * * * and pay the tax shown on its return * * *." This statement, when considered in conjunction with the statement that " * * * the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined * * *," raises serious doubt as to whether Congress intended that section 722 be a pure "relief" provision rather than an integral part of the tax law to be applied to and as of, the taxable year in determining the true and correct tax due for that year. There is nothing in the legislative history to suggest that Congress intended to depart from the deep rooted annual basis concept and the established procedure of only exacting interest on real deficiencies. Had it been their intent, we believe it would have been clearly expressed in either the statute or committee reports. Without such an expression we refuse to impute an intent to Congress to depart from the annual basis concept, and to allow the Government to retain interest on a purely potential or temporary deficiency which is

4. S.Rep.No.508, 78th Cong., 1st sess.; H.Rep. 722, 78th Cong., 1st sess.; 89 Cong.Rec. 8190–8191 (1943).

based upon a tax that is admittedly excessive and discriminatory.

Under the facts of the instant case we find that the application of section 722, which we have held takes effect, if at all, as of the time the return for the year in question is filed, results in there being no deficiency for 1941 upon which the Commissioner can retain interest. For the reasons set out above and those enunciated in the Koppers Co. case, supra, the plaintiff is entitled to recover the interest here sued for and interest thereon allowed by law. Judgment will be suspended to await the filing of a stipulation by the parties showing the exact amount due in accordance with this opinion.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

MADDEN, Judge (dissenting).

For the reasons which I gave in dissenting from the opinion of the court in Koppers Co., Inc., v. United States, 126 Ct.Cl. 847, 117 F.Supp. 181, I respectfully dissent.

LARAMORE, J., took no part in the consideration or decision of this case.