HASTINGS & CO., Inc.

v.

SMITH.

UNITED STATES

v.

HASTINGS & CO., Inc.

Civ. Nos. 13215, 14238.

United States District Court,
E. D. Pennsylvania.

June 23, 1954.

Leon I. Mesirov, Mesirov & Leonards, Philadelphia, Pa., for Hastings & Co., Inc.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, John E. Garvey, Ruppert Bingham, Sp. Assts. to the Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., for Francis R. Smith and United States of America.

CLARY, Judge.

Hastings & Company, Inc., hereinafter called "Hastings", in Civil Action No. 13215 is attempting to restrain the Collector of Internal Revenue from collecting interest on tax deficiencies (later extinguished by net operating loss carrybacks) for which the Government has made claim under an assessment which Hastings asserts was improperly made and illegal. Civil Action No. 14238 is an action by the Government to collect the same interest.

The facts fully set out in the Government's affidavit may be summarized very briefly as follows: For its fiscal year ending March 31, 1948, Hastings filed its tax return showing a small tax due, which it paid. For the year ending March 31, 1949, it filed a return showing approximately $13,000 income tax due and of this reported tax liability paid the first quarterly installment. At the end of the first quarter of the then ensuing tax year it filed an application for an extension of time in order to stay further payment under the corporate net loss carry-back provisions of the Internal Revenue Code, 26 U.S.C. § 122, and on June 15, 1950, timely filed its application for benefit under those provisions together with claims for refunds of the taxes it had paid in 1948 and 1949. Pursuant to the carry-back provisions, the Commissioner of Internal Revenue, hereinafter called "Commissioner", granted the claims for refunds, which were in due course paid to Hastings, and caused an audit of the returns to be made for the years 1948, 1949 and 1950. The audit completely revamped the tax liability of Hastings for the years 1948 and 1949. The Agent's revision showed a substantially increased tax liability for both the years 1948 and 1949 and an extremely large operating deficit for the year 1950, in fact, larger than was then claimed by Hastings. The carry-back loss of 1950 completely extinguished the tax liability for 1948 and extinguished nearly all of the tax liability for 1949. The Agent's figures, submitted to Hastings, for the years 1948 and 1950, were approved by it through its president in an Agreement dated May 7, 1951, and set out below.[1]

Hastings also executed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax", Treasury Form 870, for the year 1949, agreeing to an unextinguished tax deficiency of $3,721.71. The waiver in usual form, included the words "together with interest thereon as provided by law". On or about June 26, 1951, the Commissioner adopted the report of the Internal

[1.] The undersigned taxpayer has examined the report of the Internal Revenue Agent in Charge, Philadelphia, Pennsylvania, covering the examination of income tax returns for the years ended 4/30/48 and 4/31/50*, and agrees to the findings of the Examining Officer. It will not therefore be necessary to withhold action on same pending expiration of period of notice to taxpayer as no protest to the findings will be made.

* Both parties agree above dates should be 3/31/48 and 3/31/50.

Revenue Agent as his own determination, and on August 3, 1951, assessed against the plaintiff the deficiency in income tax for the year 1949 agreed to by Hastings together with interest thereon for the period June 15, 1949 to June 15, 1951, the thirtieth day after filing the waiver of restrictions against such assessment. The Commissioner also assessed against the taxpayer interest on the extinguished deficiency in tax, found in the 1948 return, for the period from June 15, 1948 to June 15, 1950, the date of Hastings application for benefits under the carry-back provisions; also interest on the extinguished tax liability, found for 1949, for the period from June 15, 1949 to June 15, 1950. On August 8, 1951, the Commissioner, by letter, notified Hastings of his action and of the fact of the assessment on the tax rolls of the Internal Revenue Bureau. Hastings paid the unextinguished tax deficiency found by the Commissioner for 1949 and made the subject of the Waiver Form 870 together with the interest thereon. It, however, disclaimed any liability for the further interest assessed by the Commissioner, and these two actions resulted. Each side has moved for summary judgment in its favor and since the facts are undisputed, the actions may be disposed of on the legal questions involved.

I am faced with directly contrary contentions. First, the Government insists that it is entitled to collect the interest on the agreed tax deficiencies even though the tax liability itself was extinguished by carry-backs of losses sustained in a succeeding year. This contention is, of course, vigorously opposed by Hastings. On the second point, I am confronted with the contention of Hastings that it is entitled to enjoin *as uncollectible even if owed* the collection of the interest on extinguished tax liability because it was not assessed strictly in accordance with the procedure prescribed by Section 272(a)(1) of the Internal Revenue Code [2]; further, that interest could not be assessed unless the deficiency itself was actually assessed. The answer of the Government to this contention is that it is not necessary to assess the extinguished tax liability and that interest thereon can be assessed and collected without following the procedural requirements of Section 272(a)(1).

On the first question, in support of their respective positions on the merits, both the Government and Hastings cite as authority the case of Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346. In that case there was involved a New Jersey corporation which had filed its return on December 15, 1941 for the tax period January 1, 1941 to September 30, 1941. On January 12, 1942, the Commissioner of Internal Revenue assessed the tax which respondent Seeley timely paid. Respondent was adjudged a bankrupt thereafter and a receiver was appointed on July 7, 1943. On August 2, 1943, the Commissioner, using the accelerated procedure applicable in bankruptcy cases, 26 U.S.C.A. § 274(a), assessed deficiencies in taxes with interest

---

**2.** "If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the ninetieth day) the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court * * *", 26 U.S. C.A. § 272(a)(1).

from the date of the tax to the assessment date. On March 3, 1944, respondent filed its return for the fiscal year from October 1, 1942 to September 30, 1943, showing a net operating loss for that year. This loss when carried back, in accordance with the carry-back provisions of the Internal Revenue Code, was sufficient to abate completely the tax liability for 1941. Respondent then filed claims for a refund of that part of the 1941 tax which had already been paid and for the abatement of the assessed deficiency and interest. The Commissioner abated the deficiency, but refused to refund all the tax which had been paid, retaining an amount equal to the interest which had been assessed on the deficiency. The taxpayer then sued the Collector for the interest. The District Court, 76 F.Supp. 937, dismissed the case, the Court of Appeals reversed, 3 Cir., 172 F.2d 77, and the Supreme Court, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346, in its opinion, reversed and reinstated the judgment of the district court. Mr. Chief Justice Vinson, in his decision in this case, sets out in detail the statutory scheme which presented the problem and the intent of Congress under the statutory scheme that interest be paid.[3]

The Government in its brief and at argument strongly contends that this decision controls the instant case. The Government adopts the reasoning of the Manning case and argues that the equitable considerations of that case are present here and therefore should govern. However, Hastings, just as strongly argues that because it had made *application for* the benefits of the carry-back provisions *prior to* audit and determination of the tax deficiency that fact completely distinguishes the Manning case. Hastings points out that this aspect was expressly reserved from the decision of the Manning case and further argues that this reservation intended an op-

3. "The general statutory scheme which presents the problem is as follows: As of a certain date the taxpayer has a duty to file a return for the previous fiscal year and pay the amount of tax actually due for that year. If this return is erroneously calculated and the payment is less than the tax properly due, the Commissioner, using the procedure appropriate to the particular situation, may assess a deficiency, the difference between the tax imposed by law and the tax shown upon the return. Interest upon this deficiency at the rate of six per cent from the date the tax was lawfully due to the date of the assessment is assessed at the same time as the deficiency. If a net operating loss is subsequently sustained, that loss may be carried back and added to the deductions for the two previous taxable years, with appropriate adjustments in the tax liability for those years. The problem with which we are concerned in this case is whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carry-back of a net operating loss.

"We hold that the interest was properly withheld by the Collector. The subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. (Citations omitted.) For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government. * * *

"To sustain respondent's contention would be to place a premium on failure to conform diligently with the law. For then a taxpayer who did not pay his taxes on time would receive the full use of the tax funds for the intervening period, while the taxpayer who did obey the statutory mandate and pay his lawful taxes promptly would be prohibited by § 3771(e) from having the use of the money for that period. We cannot approve such a result". Manning v. Seeley Tube & Box Co., 338 U.S. 561, 565, 566, 568, 70 S.Ct. 386, 388, 389, 390, 94 L.Ed. 346, 349, 350, 351.

posite result, when and if a case involving that point should be presented to the Supreme Court. In support thereof Hastings cites two cases wherein refunds were granted taxpayers of interest paid on tax deficiencies. Henry River Mills Co. v. U. S., 96 F.Supp. 477, 119 Ct.Cl. 350; Premium Oil Refining Co. of Texas v. U. S., D.C., 107 F.Supp. 837, U. S. v. Premium Oil Refining Co., 5 Cir., 209 F.2d 692. I do not consider these cases as controlling the instant situation, Koppers Co. v. U. S., Ct.Cl., 117 F.Supp. 181; Kuder Citrus Pulp Co. v. U. S., D.C., 117 F.Supp. 395. Both cited cases involve adjustments under the excess profits tax provision of the Internal Revenue Code, 26 U.S.C.A. § 722. Such adjustments are made on the basis of conditions existing at the time of the payment of the tax and result in a determination of no tax having been due the United States at the time of the filing of the return. On the other hand, in the case of the application of the carry-back provisions, the tax extinguished by its application in nowise affects the tax liability of the taxpayer at the time the original tax was due and payable and it so remains until the occurrence of the subsequent events (an operating loss in a succeeding taxable year).

There are no legal or equitable principles here involved which would warrant a different result in this case based solely upon the fact that *prior to* the determination of a deficiency tax liability by the Commissioner, the taxpayer had made application for the benefits of the carry-back provisions and claims for refund. The taxes involved

had been due the United States and the United States should have had the use of the tax money from the due date. It did not have it because of the faulty return of the taxpayer and I see no legal, equitable, or moral justification in relieving the taxpayer of liability for interest under such circumstances. It is far from certain that merely because the Supreme Court refused to pass upon a question of law not before it, the Court would arrive at any different conclusion under the present facts than that reached in the Manning case. I think it would reach the same conclusion.

The second question involved presents an entirely different legal question. If I were to decide the case solely on the merits, I would perforce be persuaded to find in favor of the Government. But, says Hastings, even though the interest assessed is owed, it is *uncollectible* by reason of the provision of Section 272 (a)(1) [4]. It is Hastings' contention that the interest is part of the tax and is so contemplated in Section 292(a) of the Internal Revenue Code [5]. There is decisional support of this contention in the case of Big Diamond Mills Co. v. U. S., 8 Cir., 51 F.2d 721. In that opinion Judge Booth points out that there is but a single liability covering both tax and interest. It appears to me that since interest due on the tax deficiency is an incident of the tax under the statute and both tax and interest constitute a single liability that the interest as found in this case is a tax.

Hastings argues that since under Section 292(a) interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency,

4. See Note 2, supra.

5. "Interest on deficiencies

"(a) General rule. Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, *and shall be collected as a part of the tax*, at the rate of 6 per centum per annum from the date prescribed for payment of the tax (or, if the tax is paid in installments, from the date prescribed for the payment of the first installment) to the date

the deficiency is assessed, or, in the case of a waiver under section 272(d), to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed whichever is the earlier. If any portion of the deficiency assessed is not to be collected by reason of a prior satisfaction, in whole or in part, of the tax, proper adjustment shall be made with respect to the interest on such portion." (Emphasis added.) 26 U.S.C.A. § 292(a).

the failure of the Government to assess a deficiency precludes the assessment of any interest on that deficiency. To answer this contention the Government relies in great part on the case of Rodgers v. U. S., 108 F.Supp. 727, 123 Ct.Cl. 779. In that case, the United States Court of Claims held that the assessment of the extinguished deficiency was not required as a condition of accrual of liability for interest thereon. That case was one to recover interest, its facts being similar to those of the instant case. However, it involved a suit for refund where the equitable principles of setoff applied. It did not touch the exact point involved in this case, the collectibility of the tax as opposed to refund. Neither the Government nor Hastings has cited any case directly analagous or parallel with the facts of the present case. Were this case a suit for refund the decisions in the Manning and Rodgers cases would be completely dispositive of all contentions and in favor of the Government. A taxpayer is, however, under Section 272(a) entitled to restrain the collection of taxes not assessed in strict conformity with the statute providing for the assessment of such a deficiency. See Ventura Consolidated Oil Fields v. Rogan, 9 Cir., 86 F.2d 149, certiorari denied 300 U. S. 672, 57 S.Ct. 610, 81 L.Ed. 878. Admittedly, in this case the Commissioner did not send the "ninety day letter" to the taxpayer. The so-called interest deficiency was assessed without notice on August 3, 1951, and the taxpayer notified by letter of such action five days later. That action of the Commissioner effectively precluded Hastings from recourse to the Tax Court of the United States, Mason v. Commissioner of Internal Revenue, 5 Cir., 210 F.2d 388. The special procedure thus set up by the statute for a redetermination of an asserted tax deficiency in a special forum was closed to Hastings. It would appear, therefore, that the only avenue remaining to Hastings was a suit to enjoin the collection of the tax. The Government argues that there is a full, adequate and complete remedy at law available to Hastings by paying the tax and suing for refund. Hastings' reply to the Government's position refutes the availability to it of any valid remedy since the Manning decision and the decision in the case of U. S. v. Premier Oil Refining Co. of Texas, 5 Cir., 209 F.2d 692, clearly hold that if the tax is *owing*, even though improperly assessed, no refund can be had; further, that if such an argument should be allowed to prevail, the net effect of a decision in favor of the Government on that point would be to render nugatory the express determination of Congress that "no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer".

■ The final contention of the Government is that under the peculiar facts of the instant case, the provisions of Section 272(a)(1) are not applicable. It argues that the Agreement of May 7, 1951,[6] and the execution of Treasury Form 870 for the year 1949 must be read together and construed as a "consent" by Hastings to final determination by the Commissioner of its 1950 operating loss; to the carry-back of such loss to its earlier tax years; and to the determination of the taxpayer's taxable income for 1948, *before* it could be determined as to the balance of the loss which would then be carried forward and applied to its tax year ending in 1949. It argues that while the Government believes the Agreement[7] was a waiver equivalent in effect to that contained in Treasury Form 870 for the year 1949, Hastings in fact by executing the form for the year 1949 agreed to *all* determinations and assessments made by the Commissioner on the basis of the figures contained in the Internal Revenue Agent's report. The stated agreement makes no reference at all to interest. Treasury Form 870 provides for interest. Had the agreement entered into between the Revenue Agent and Hastings contemplated an assessment of interest, it would have been a simple matter to in-

---

6. See Note 1, supra.

7. See Note 1, supra.

clude the calculations for those years on the Form 870 executed by the taxpayer, since the form itself provides for the execution of a waiver for a total of three years. This exact situation has confronted the Internal Revenue Bureau in other cases and Form 870 has been used in similar circumstances to effect the result now sought by the Government; U. S. v. Premier Oil Refg., etc., supra, 209 F.2d at page 694. The Government has cited no case in support of its contention in this regard and since it chose to use two instruments, I must construe them separately. See Ventura Consolidated Oil Fields v. Rogan, supra, 86 F.2d at page 154. The report of the Revenue Agent and the figures agreed to by Hastings in the signed agreement cover merely the total operating loss carry-back and its application. I construe it to be merely a waiver of the "thirty day letter" usually sent a taxpayer for the purpose of allowing the individual to seek an administrative hearing if in disagreement with the Agent's findings. The Treasury Department in the promulgation of Form 870 specifically provided not only for the assessment of a deficiency but also provided that the deficiency should be "together with interest thereon as provided by law". Not having provided a similar clause in its agreement of May 7, 1951, I do not feel that I can at this time, particularly in view of the expiration of the periods of limitation (for the year 1948–June 15, 1951; for the year 1949 - June 15, 1952), supply that deficiency. This conclusion appears justified in the absence of decided cases on point and particularly so since the action of the Commissioner in summarily assessing the interest precluded any determination by the Tax Court as to the correctness of the Commissioner's legal position and computation. Conceivably, there could arise an honest difference of opinion as to the liability for and the amount of such interest and to so foreclose a proper legal review would, in my opinion, be unjust and inequitable.

Since I have here determined that the interest involved is a "tax", it necessarily follows that before a legal assessment of the tax can be made, the Commissioner must follow the procedure outlined in Section 272(a)(1) including notice to the taxpayer with consequent right to a legal redetermination in the Tax Court. Failure to do so allows the taxpayer to take advantage of that portion of Section 272(a) [8] which provides:

> "The making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

I must, therefore, however reluctantly, come to the conclusion that collection of this interest must be enjoined and the action of the Government to recover it must be dismissed.

Appropriate orders will be entered in each case.