# UNITED STATES
v.
## PREMIER OIL REFINING CO. OF TEXAS.

### No. 14487.

United States Court of Appeals Fifth Circuit.

Jan. 6, 1954.

Rehearing Denied March 22, 1954.

Louise Foster, Ellis N. Slack, Robert N. Anderson, Sp. Assts. to the Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Frank B. Potter, U. S. Atty., Midland, Tex., Tom M. Shaw, Asst. U. S. Atty., Dallas, Tex., for appellant.

Harold B. Pressley, Jr., Eugene M. Locke, Locke, Locke & Purnell, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

In an action against the United States of America to recover the amount of $56,855.41 withheld as interest on excess profits tax deficiencies which were subsequently abated, the District Court gave judgment for the plaintiff Premier Oil Refining Company of Texas. The Government has appealed.

Appellee, a Texas corporation, timely filed its income and excess profits tax

returns for the calendar years 1943, 1944, and 1945 with the Collector of Internal Revenue for the Second District of Texas. In its excess profits tax returns appellee reported an average base period net income of $93,150.36 for the years 1943 and 1944 and $116,437.95 for 1945, on the basis of which amounts its excess profits taxes were computed and paid. Title 26 U.S.C. 1946 ed., § 713(d) and (e) sets forth the method of determining average base period net income, which in turn [1] involves the computation of net income under the sections of Chapter I of the Internal Revenue Code which relate to income tax on corporations. In the making of its computations and in stating in its returns its net income for each of the three years appellee omitted substantial amounts therefrom as a result of having made unallowable deductions. Upon discovering this, the Commissioner disallowed the deductions [2] and re-computed the taxes for each year. The taxpayer after first protesting the disallowance of its claimed deductions, later consented to the assessment of the income tax deficiencies, and such deficiencies were collected with interest.

On March 2, 1947, appellee filed timely Form 991 applications for relief for the taxable years 1943, 1944, and 1945 under Section 722 of the Internal Revenue Code, 26 U.S.C. 1946 ed., § 722. This section in pertinent part provides that "In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter." Appellee claimed a constructive average base period net income of $357,000 for each of the years 1943, 1944, and 1945, as it had previously done for the years 1941 and 1942. The prior claims were allowed by the Bureau on September 25, 1944, at

1. This statute requires among other particulars the computation of excess profits net income for each taxable year. 26 U.S.C. 1946 ed., § 711(a) provides that the excess profits net income for any taxable year beginning after December 31, 1939, shall be the normal-tax net income as defined in § 13(a) (2), 26 U.S.C. 1946 ed., § 13(a) (2), except that certain adjustments specified in § 711(a) shall be made. Section 13(a) (2) relates to income tax on corporations in general and provides that the term "normal-tax net income" means the adjusted net income minus the credit for dividends received provided in Section 26(b), 26 U.S.C. 1946 ed., § 26(b). Section 13(a) (1) defines the term "adjusted net income" as meaning the net income minus the credit provided in Section 26(a), relating to interest on certain obligations of the United States and Government corporations. "Net income" is defined under 26 U.S.C. 1946 ed., § 21 as meaning the gross income computed under Section 22, less the deductions allowed by section 23.

2. These deductions are reflected in agreed adjustments which appellee afterwards made with the Internal Revenue Agent in Charge at Dallas, Texas, and which provide:
"Disallowance of Loss—

| | 1943 | 1944 | 1945 |
|---|---|---|---|
| Defense Plant Corporation for which reimbursement was received in 1944 and 1945 | $ 90,000.00 | $  — | $  — |
| Excessive Depreciation | 18,227.05 | 18,488.45 | 10,123.60 |
| Refinery Capital Expenditures charged to repairs | | 64,221.21 | 212,792.12 |
| State Income Tax allowed | (3,555.79) | | |
| Net Increase in taxable income | $104,671.26 | $82,709.66 | $222,915.72" |

which time it was determined that use of the average base period net income for the two earlier years resulted in an excessive and discriminatory tax for those years and that the larger credit of $357,000 should stand as a substitute therefor. Under existing regulations of the Commissioner adopted in 1941, appellee was entitled to use the larger credit so determined (except as further adjustments might be required) in subsequent taxable years. On September 12, 1947, the Excess Profits Tax Council determined that appellee was entitled to a constructive average base period net income of $357,000 for the years 1943, 1944, and 1945. Thereafter, the Commissioner computed appellee's tax liability for those years and made findings[3] as to such liability both prior and subsequent to the application of the relief adjustments under Section 722. These findings show that before allowance under Section 722 there was a "deficiency" in income and excess profits taxes for each year whereas after allowance under § 722 there were overassessments of excess profits taxes for 1943 and 1944, a small deficiency in such tax for 1945, and deficiencies in income taxes for the three years.

Appellee thereafter, in May, 1948, pursuant to Section 272(d) of the Internal Revenue Code, 26 U.S.C. 1946 ed., § 272(d), filed waivers of the restrictions provided in Section 272(a)[4] of the Code, thereby consenting to the assessment and collection of the income tax deficiencies for the three years with interest and accepting the overassessments for 1943 and 1944—all of which figures were based on the Commissioner's

3. A summary of these findings is as follows:

| | Deficiency Before Allowance Under Section 722 | Deficiency (or Overassessment) after Allowance Under Section 722 | Increase (or Decrease) in Tax Liability Attributable to Section 722 |
|---|---|---|---|
| **1943** | | | |
| E. P. Tax | $ 78,359.80 | ($ 96,947.98) | ($175,307.78) |
| Income Tax | 9,060.07 | 98,144.89 | 89,084.82 |
| Net | $ 87,419.87 | $ 1,196.91 | ($ 86,222.96) |
| **1944** | | | |
| E. P. Tax | $ 55,529.92 | ($119,644.57) | ($175,174.49) |
| Income Tax | 9,178.01 | 98,309.85 | 89,131.84 |
| Net | $ 64,707.93 | ($ 21,334.72) | $ 86,042.65 |
| **1945** | | | |
| E. P. Tax | $190,785.32 | $ 366.52 | ($190,418.80) |
| Income Tax | 90.00 | 88,994.82 | 89,084.82 |
| Net | $190,695.32 | $ 89,361.34 | ($101,333.98) |

4. This statute in part provides:
"If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. * * *"

findings after allowance under Section 722.[5] However, the interest which appellee agreed to pay and did pay did not include interest on the excess profits tax "deficiencies" which were found to exist before allowance of relief under Section 722. This interest was computed by the Commissioner on forms prepared for his own use which specifically refer to "interest on potential deficiency". And was calculated from the date prescribed for the payment of the tax to the thirtieth day after the filing of waivers as specified in 26 U.S.C. 1946 ed., § 292(a).

By letter dated June 2, 1948, the Internal Revenue Agent in Charge at Dallas transmitted to appellee a recomputation of its tax liability for the years 1943 and 1944 and notified appellee among other things that after the overassessments had been certified to the Collector by the Commissioner it would be advised as to how the overassessments had been applied. On June 8th the Agent in Charge notified appellee by letter of the Bureau's conclusions as to its tax liability for 1945. This letter enclosed a copy of a supplemental report disclosing deficiencies in appellee's income tax and excess profits tax for that year and stated "This office approves such supplemental report and is closing your 1945 returns on the basis thereof." Thereafter, Certificates of Overassessment were issued. These certificates are not before us but the pleadings show that they do reflect that the overassessments of excess profits taxes for the years 1943 and 1944, to the extent here relevant, was credited as follows: "To additional excess profits tax interest for the year 1943, $20,084.89" and "$10,901.36 to additional excess profits tax interest for the year 1944." This interest was demanded from appellee on August 25, 1948, at which time it received from the Bureau Form 7658 showing excess profits tax interest in the above-mentioned amounts to be due for 1943 and 1944. There was, however, no explanation as to how this interest had been computed and upon appellee's inquiry the Commissioner transmitted to taxpayer Form M-1698 whereon it was specifically shown that there had been a computation of a "deficiency before allowance under Section 722" and that interest was computed on such amounts from the due date of the respective return to a date 30 days after the filing of a waiver in the amounts of $20,084.79 for the year 1943, $10,901.36 for 1944, and $25,869.26 for 1945. Appellee paid these three items of interest in full and filed Form 873 claiming a refund of these amounts. These claims were disallowed in full by the Deputy Commissioner, whereupon appellee instituted this suit.

The amended complaint alleged among other things that Form M-1698 as received by the corporation taxpayer showed that the Bureau had computed excess profits tax that would have been due by it but for the granting of relief under Section 722; but that such relief was in fact granted, and, as a consequence, no warrant exists in law for the collection of interest on a tax for which it was never liable and which tax was not and could not have been assessed. It alleged that the facts entitling taxpayer to relief under Section 722 existed at the time it filed returns for 1943, 1944, and 1945; that such facts were identical with those upon which it had been granted relief for 1941 and 1942, and were facts taken into consideration by the Revenue Agent in making his initial report on the returns for the years 1943 and 1944 which was before applications for relief for the years 1943, 1944 and 1945 had been filed. Further, that Section 722(a) of the Internal Revenue Code provides that if the taxpayer establishes that he is entitled to relief under that section, the constructive average base period net income shall be used "in lieu of the average base period net income otherwise determined"; and that the relief

5. See footnote 3.

granted under Section 722 completely replaces the credit otherwise computed in determining the tax liability of a taxpayer. The relief prayed was that judgment be entered in favor of appellee and against the defendant, the United States of America, for $56,855.41 with interest and costs.

The United States in its answer sets forth that the Commissioner determined that there were deficiencies in excess profits taxes for the three years before any allowance of relief under Section 722 and it is averred that the application of the additional excess profits credit under Section 722 extinguished these excess profits tax deficiencies. After the pleadings were closed the Government filed a motion for summary judgment on the pleadings together with supporting affidavits and attached exhibits and this motion was denied and a trial was had on the merits. The court below found as facts that no excess profits tax deficiency was ever found or determined and that there was no assessment thereon and concluded that under § 292(a) of the Internal Revenue Code, supra, interest on a deficiency may be charged after the deficiency is definitely found and determined and an assessment is made thereon but that these three steps were never taken by the Government. Judgment was accordingly entered that the taxpayer have and recover from the United States the sum of $56,855.41 together with interest thereon, and thereafter on joint motion of the parties an amended judgment was entered reducing the sum awarded to $52,292.40.

Appealing from this judgment the United States contends that the findings of the District Court do not support the judgment; that the judgment is excessive in amount and contrary to law; that the findings are not supported by the evidence or by the record; and that the interest on the deficiencies in tax which were wiped out by allowance made under Section 722, Internal Revenue Code, was all due and owing, and neither tax nor interest was overpaid by appellee, the determination of the court to the contrary notwithstanding.

The court stated that it found the facts to be as disclosed by the pleadings, exhibits, and affidavits on file. So, in the instant case, we are in as good a position as was the trial judge to evaluate the evidence. Turning thereto we find an affidavit by Morrow, an abnormality claim reviewer in the Collections Division of the Bureau, which recites that his examination of the Bureau's administrative files containing the records of appellee for its tax years ending December 31, 1943, 1944, and 1945 shows that the Commissioner made a final determination of the tax liability of appellee for each of those years and computed such liability prior and subsequent to the application of the relief adjustments under Section 722. It also affirmatively appears that it is not the usual administrative procedure of the Bureau, where all or any part of a tax deficiency has been extinguished by application of the relief provisions contained in Section 722, to assess the amount of the tax deficiency extinguished, though the interest due on such tax deficiency is assessed; and this procedure was followed here. This evidence is not only not contradicted but it is supported by the Commissioner's findings; by the enclosures which accompanied the final notices of deficiency on June 2 and 8, 1948, and which set forth full and complete recomputations of appellee's tax liability for the three years in question; and by the fact that interest was specifically computed on "potential deficiencies" and appellee received Treasury Department forms demanding such interest for the three years. In addition, the interest assessments for the years 1943 and 1944 were specifically set forth in the Certificates of Overassessment issued by the Commissioner for those years.

Upon this record, we conclude that the District Court erred in holding that the

potential deficiencies were never determined although we agree with the trial judge that they were never formally assessed. However, Section 272(a) does not specifically require a separate formal notice of determination and assessment of an extinguished deficiency. To the extent that a determination of the deficiency existing prior to the allowance of Section 722 relief was required, it was directly reflected in the Commissioner's findings and the enclosures attached to the notices of June 2 and 8, 1948. In the light of appellee's waiver of the restrictions provided in Section 272(a) and its acceptance of the net overassessments, it is not easy to comprehend how Section 272(a) could under present circumstances be construed to require anything further, or how there could have been any wrongful failure of compliance with the statutory procedure set out in Section 272.

Nor can we construe Section 292(a), which sets forth the general rule with respect to the assessment of interest, to require with respect to determination and assessment of a deficiency any steps in addition to those set forth in Section 272, as a prerequisite to assessment of interest on that deficiency. Where, as here, there is no necessity for a separate assessment of a deficiency, by reason of its extinguishment by the allowance of Section 722 relief and acceptance of the resulting net overassessment, we do not believe Section 292(a) requires such an assessment of the deficiency as a condition of accrual of liability for interest. Nor is there any suggestion in Section 271(a) of the Code which defines a deficiency, or in Reg. 111, Sec. 292.271-1 implementing this section, that a deficiency need be assessed or even asserted in order for it to be such. We are therefore of opinion that no assessment of the deficiencies here in question was required. Furthermore, it is a well established principle that it is not necessary that a tax be assessed before it can be legally collected, and this is recognized by Section 273 of the Revenue Acts of 1924 and 1926 (26 U.S.C.A. § 1047). Muir v. United States, 3 F.Supp. 619, 78 Ct.Cl. 150; Meyersdale Fuel Co. v. United States, 44 F.2d 437, 446, 70 Ct.Cl. 765.

In the most recent case in point, Koppers Company, Inc., Successor on Merger to Koppers United Company and Subsidiaries v. United States, Ct.Cl., 117 F.Supp. 181, the Court of Claims relied as does the appellee herein upon language of Section 722 to the effect that the tax "shall be determined by using * * * constructive average base period net income in lieu of the average base period net income". Italicizing the use of such terms as "determined" and "in lieu of" the court concluded that the Commissioner must take cognizance of Section 722 in "determining" a "deficiency" and in so doing the *constructive* average base period net income must of necessity be used in arriving at the basis on which interest is computed. In disagreement with this conclusion the dissenting judge pointed out that there is no escape from the mandate of Section 722(d) which requires that the taxpayer "shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section * * *". Further, that the difference between the case which the court was then considering and cases like Manning v. Seeley Tube and Box Co., 338 U.S. 561, 565, 70 S.Ct. 386, 389, 94 L.Ed. 346, in which it was held that interest was payable on deficiencies later wiped out by the carryback of losses from later years, is, as a practical matter, more apparent than real. We agree. In Manning v. Seeley Tube and Box Co., supra, the court declared:

"We hold that the interest was properly withheld by the Collector. The subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date

the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. See Rodgers v. United States, 1947, 332 U.S. 371, 374 [68 S.Ct. 57, 92 L.Ed. 3]; United States v. Childs, 1924, 266 U.S. 304, 309–310 [45 S.Ct. 110, 111, 69 L.Ed. 299]; Billings v. United States, 1914, 232 U.S. 261, 285–287 [34 S.Ct. 421, 425–426, 58 L.Ed. 596]. For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government.

"It is apparent from an inspection of the Code that Congress intended the United States to have the use of the money lawfully due when it became due. Several sections of the Code prescribe penalties and additions to the tax for negligence and fraud. A taxpayer who files a timely return but does not pay the tax on time must pay interest on the tax until payment. * * *"

To like effect are Cumberland Portland Cement Co. v. United States, D.C., 101 F.Supp. 577, affirmed 6 Cir., 202 F.2d 152; Brandtjen & Kluge v. United States, D.C., 78 F.Supp. 509. Also cf. Standard Roofing & Material Co. v. United States, 10 Cir., 199 F.2d 607.

For the reasons stated, the judgment appealed from is

Reversed.