**STANDARD OIL COMPANY (NEW JERSEY), Plaintiff,**

v.

**Denis J. McMAHON, individually and as District Director of Internal Revenue, Lower Manhattan, Defendant.**

United States District Court
S. D. New York.

Feb. 27, 1956.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for plaintiff, D. Nelson Adams and John N. Stull, New York City, of counsel.

Thomas B. Gilchrist, Jr., Chief U. S. Atty. for the Southern District of New York, New York City, for defendant, Howard A. Heffron, Asst. U. S. Atty., New York City, of counsel.

HERLANDS, District Judge.

Plaintiff-taxpayer commenced this action[1] on March 21, 1955 to enjoin defendant-District Director of Internal Revenue from collecting or attempting to collect from plaintiff any part of two certain assessments of *interest* on deficiencies in plaintiff's consolidated excess profits tax returns for the calendar years 1943 and 1944.

The decisive question in this case is raised by defendant's motion to dismiss the complaint on the ground that there is "lack of jurisdiction over the subject matter". Rule 12(b) (1) F.R. C.P., 28 U.S.C.A. The answer to that question involves the interpretation and application of section 272(a) (1) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 272(a) (1); now, with changes, Internal Revenue Code of 1954, §§ 6212 (a) and 6213(a).[2]

Section 272(a) (1) is an express exception[3] to the general provision that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Section 3653(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3653(a), now Internal Revenue Code of 1954, § 7421(a).

In the exceptional case provided for by section 272(a)(1), the taxpayer may maintain an injunction suit to restrain the collection of an assessment where the assessment is for a tax deficiency and the tax authorities have not complied with the procedure and timetable prescribed by section 272(a) (1).

Section 272(a) (1), so far as relevant, provides:

"If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with The Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court. * * * *"

The core of this controversy can be excised from its factual and legal complexities by stating defendant's position syllogistically:

1. The procedure and timetable prescribed by section 272(a) (1) apply only to an assessment of a tax deficiency and not to an assessment of *interest* on a deficiency.

---

1. In *addition to* injunctive relief, the complaint prays for a declaratory judgment that plaintiff is not indebted in any amount for interest on the excess profits tax deficiency for the years 1943 and 1944, and that defendant's assessments therefor are invalid.

2. Section 729(a) of the Internal Revenue Code of 1939 makes sections 272(a) (1) and 292 applicable to excess profits taxes.

3. Another settled exception to the general prohibition of an injunction proceeding against a particular collector is the case "where the tax is clearly illegal" or where "other special circumstances of an unusual character make an appeal to equitable remedies appropriate." Chief Circuit Judge Clark in National Foundry Co. of New York, Inc., v. Director of Internal Revenue, 2 Cir., 229 F.2d 149, 151.

2. This case involves an assessment of *interest* on a deficiency as distinguished from an assessment of a deficiency.

3. Therefore, since section 272(a) (1) does not apply to this case, plaintiff's action for an injunction—which is mistakenly based on that section—must be dismissed for jurisdictional insufficiency.

Whether the above premises are valid must be determined in the light of the allegations contained in the complaint and as amplified by a "Stipulation of Facts."

## I.

*The 1943 Tax Return:*

On June 29, 1954, defendant mailed to plaintiff a notice that there had been assessed against plaintiff the sum of $6,334,565.70 (subsequently corrected and reduced to $1,682,410.45) representing *interest* on a deficiency in plaintiff's excess profits tax for the year 1943. Immediate payment was demanded.

At no time has plaintiff agreed to the determination or assessment of any deficiency in its excess profits tax for 1943.

Plaintiff's consolidated excess profits tax return for the calendar year 1943 had been filed on September 15, 1944.[4]

In that tax return, plaintiff claimed an unused excess profits credit carry-over from the year 1941 as an unused excess profits credit adjustment on its 1943 return. As a result, plaintiff's 1943 return showed no excess profits tax due.

Defendant asserts that a substantial portion of the 1941 carry-over credit which plaintiff utilized on its 1943 return was improper and should be eliminated. On the other hand, plaintiff claims that the 1941 carry-over was proper; and it is plaintiff's position that there is an unresolved controversy between plaintiff and defendant with respect to the propriety of the 1941 carry-over and whether there ever was a deficiency in plaintiff's excess profits tax for 1943.

Defendant further contends that the elimination of the improper 1941 carry-over credit would result in a deficiency in plaintiff's excess profits tax for the year 1943, in the absence of other circumstances; that there were such other circumstances subsequently occurring that prevented a deficiency in 1943, namely, that plaintiff was entitled to the benefit of an unused excess profits credit carry-

4. In the absence of a waiver, the three-year statute of limitations for making deficiency assessments, § 275(a) would have run against the Government on September 15, 1947. Various waivers (Form 872) were duly signed, extending the statute from time to time. The last waiver, dated October 15, 1953, extended the statute to June 30, 1954 (Exhibit "1" attached to the Stipulation of Facts).

Under date of October 16, 1953, an internal revenue agent rendered his report of his examination of plaintiff's 1943 tax return. This report was, apparently, the basis for defendant's challenge of plaintiff's carry-overs from 1941 to 1943, as the report proposed the disallowance of $37,933,558.13 of such carry-overs, and the substitution of a carry-back of $33,607,830.94 from 1945. (Exhibit "3" attached to the Stipulation of Facts contains schedule #1 of the agent's report.)

Under date of December 21, 1953, defendant sent to plaintiff a letter of transmittal and a copy of the agent's report of October 16, 1953. The letter proposed

adjustments based upon the report and constituted a preliminary notice giving plaintiff thirty days within which to file a protest with defendant against the proposed adjustments (Exhibit "3").

On January 19, 1954, plaintiff filed a protest setting forth the grounds on which it relied in contesting the proposed adjustments. A hearing before the Appellate Division was requested.

On March 8, 1954, plaintiff was granted an informal hearing with representatives of the Audit Division.

On June 29, 1954—one day before the expiration of the statute as extended—plaintiff was sent Form 7658, Statement of Income Tax Due, notifying plaintiff that there had been assessed against it $6,334,564.70, representing *interest* on a deficiency in the 1943 excess profits tax return and demanding payment. This amount was subsequently corrected and reduced to $1,682,410.45 (Exhibits "4" and "5" attached to the Stipulation of Facts).

On January 14, 1955, a hearing was held before the Appellate Division.

back from the year 1945;[5] and that, therefore, the deficiency in respect of plaintiff's excess profits tax for 1943 abated and was eliminated as and when the 1945 carry-back was applied to the 1943 tax.

## II.

*The 1944 Tax Return:*

On November 24, 1954, defendant mailed to plaintiff a notice that there had been assessed against plaintiff the sum of $209,332.48 (subsequently corrected and reduced to $172,394.18), representing *interest* on plaintiff's excess profits tax for 1944. Immediate payment was demanded.

At no time has plaintiff agreed to the determination or assessment of any deficiency in its excess profits tax for 1944.

Plaintiff's consolidated excess profits tax return for the calendar year 1944 had been filed on September 14, 1945.[6] In that tax return, plaintiff claimed an unused excess profits credit carry-over from the year 1942 as an unused excess profits credit adjustment on its 1944 return. After giving effect to this 1942 carry-over, plaintiff's 1944 return showed an excess profits tax in the amount of $947,510.41 to be due and owing, which amount was paid by plaintiff when due.

Defendant asserts that the 1942 carry-over credit which plaintiff utilized on its 1944 return was improper and should be eliminated. This is disputed by plaintiff.

Defendant further contends that the elimination of the improper 1942 carry-over credit would result in a deficiency in plaintiff's excess profits tax for the year 1944, in the absence of other circumstances; that there were such other circumstances subsequently occurring which prevented the deficiency in 1944, namely, that plaintiff was entitled to the benefit of an unused excess profits credit carry-back from the year 1945;[7] and that, therefore, the deficiency in respect of plaintiff's excess profits tax for 1944 abated and was eliminated as and when the 1945 carry-back was applied to the 1944 tax.

## III.

*The Gist of Plaintiff's Argument:*

Plaintiff argues that it has been improperly foreclosed from exercising the right to petition the Tax Court for a re-determination of the alleged 1943 and 1944 deficiencies, because defendant did not mail the usual 90-day letter, the statutory notice of deficiency, and because defendant did not thereafter assess such 1943 and 1944 deficiencies.

This argument entails the contention that, by virtue of the provisions contained in section 292(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 292(a), interest on a deficiency must be assessed at the same time that the deficiency itself is assessed, and that in the absence of an assessment of the deficiency, there can be no independent or separate assessment of interest on such deficiency. Section 292(a) provides that "interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, * * * and

---

5. On September 13, 1946, plaintiff filed its Consolidated Excess Profits Tax Return for 1945.

On February 9, 1955, plaintiff received from defendant an internal revenue agent's report (dated November 26, 1954) stating that the excess profits credit on plaintiff's 1945 return exceeded the excess profits net income for that year.

6. On September 24, 1954, plaintiff received from defendant an internal revenue agent's report (dated April 29, 1954) proposing a disallowance of a 1942 carry-over and an allowance of a 1945 carry-back.

On November 24, 1954, plaintiff was sent Form 7658, Statement of Income Tax Due, notifying plaintiff of an assessment in the amount of $209,332.48, representing *interest* on a deficiency in the 1944 excess profits tax return and demanding payment. This amount was subsequently corrected and reduced to $172,-394.18 (Exhibits "6" and "7" attached to the Stipulation of Facts).

December 31, 1954 was the expiration date of the last waiver signed by plaintiff (Exhibit "2" attached to the Stipulation of Facts).

7. See footnote "5."

shall be collected as a part of the tax, at the rate of six per centum per annum from the date prescribed for the payment of the tax * * * to the date the deficiency is assessed, * * *." This language means, according to plaintiff, that interest may not be lawfully assessed unless defendant first has determined that there is a deficiency and the amount of the deficiency; and that interest may not be collected, at the statutory six per cent rate to the date the deficiency is assessed, unless defendant shall have first assessed the deficiency. Applying this line of reasoning to the facts herein, plaintiff points out that defendant did not assess a deficiency in respect of plaintiff's excess profits tax for either 1943 or 1944; that no notice of deficiency in respect of the alleged 1943 and 1944 deficiencies was ever sent to plaintiff; and that, therefore, the assessments of interest on such deficiencies are invalid and not enforceable by payment.

## IV.

*The Gist of Defendant's Argument:*

In point of fact, defendant argues, the 1941 and 1942 carry-overs improperly reduced plaintiff's excess profits tax for 1943 and 1944. In the course of his audit examination, defendant determined (without assessment) that there were tax deficiencies for the years 1943 and 1944, and that plaintiff was entitled to certain carry-backs for the year 1945. When defendant applied the 1945 carry-backs to the 1943 and 1944 deficiencies, the 1943 and 1944 deficiencies were cleaned up and eliminated as of December 31, 1945, the date when plaintiff became entitled to the 1945 carry-backs. However, the 1943 and 1944 deficiencies, as determined by defendant, were a subsisting obligation or indebtedness of plaintiff to defendant until such time as the deficiencies abated by application of the 1945 carry-backs. From the time the full and proper amount of 1943 and 1944 taxes should have been paid to the date of the abatement of the deficiencies, interest on that obligation or indebtedness was payable to defendant. Inasmuch as the 1943 and 1944 deficiencies were extinguished, there was no reason for defendant to make an assessment of the abated deficiencies. Since defendant had no occasion to make an assessment of the abated deficiencies, there was no necessity under section 272(a) (1) for defendant to send plaintiff a notice of defendant's determination of such deficiencies. Section 292(a) should not be construed, in this case, as requiring the assessment of a deficiency as a simultaneous precedent condition to the assessment of interest on that deficiency.

■ This decision recognizes the distinction in section 272(a) (1) between a "determination" of a deficiency and an "assessment." [8] That section authorizes, but does not require, the Commissioner to send a notice of deficiency when he determines that there is a deficiency. It is only when he *assesses* the deficiency that he *must* send a notice of deficiency to the taxpayer. An assessment is more than a determination. It is the first objective step in the process of actually collecting the tax from the taxpayer.

■ Where the Commissioner, in auditing several tax returns of the taxpayer for a number of tax years, computes various debits and credits—such as carry-overs and carry-backs—and the final figure or balance does not reflect a

8. The word "assessment" is not specifically defined in the Internal Revenue Code. However, as used in section 272(a) (1) "assessment" has been interpreted to mean the action of the Commissioner when he signs the monthly assessment list which is then forwarded to the Director (formerly Collector). The taxpayer is thereafter notified of the assessment by the local Director, who demands payment of the tax at a time determined by him. 9 Mertens, Law of Federal Income Taxation (1943), § 49.20, pp. 22–23; Anderson v. United States, 1936, 15 F.Supp. 216, 83 Ct.Cl. 561; Anderson v. United States, 1936, 15 F. Supp. 225, 83 Ct.Cl. 475; United States v. Bank of Commerce & Trust Co., D.C. W.D.Tenn.1940, 32 F.Supp. 942; Welch Insurance Agency v. Brast, 4 Cir., 1932, 55 F.2d 60; Davidovitz v. United States, Ct.Cl.1932, 58 F.Supp. 1063.

sum owing by the taxpayer to the Government, there is no deficiency to be assessed.[9] This is so notwithstanding the fact that some of the intermediate figures or interim calculations—as distinguished from the final balance—may have involved a determination that there were deficiencies. Where, as in this case, the final balance does not result in a deficiency, the tax authorities are not required to make an assessment of deficiencies because the only purpose of the assessment would be to collect such deficiencies, whereas that very purpose has become academic by virtue of the abatement and satisfaction of such deficiencies by the application (in this case) of the 1945 carry-back.

In the routine case, the assessment of the deficiency follows the statutory notice of deficiency and initiates the process of collection whereby the tax authorities demand payment or reach out to protect the claim for such deficiency by lien or attachment. In such a case, the assessment must be preceded by the expressly required notice of deficiency, commonly called the "90-day letter." But where, as here, the Government has been auditing a number of plaintiff's returns, the Government is not bound to isolate and treat the tax return for each year as a completely separate and independent account. The Code provisions for carry-overs and carry-backs, by their very nature, require that the same taxpayer's returns for the several years to which such provisions would be applicable, be correlated and treated as one account, although the statement of the taxpayer's ultimate liability must be broken down by tax years.

When, in this case, the Government determined (1) that there were improper carry-overs from 1941 and 1942 into 1943 and 1944, resulting in deficiencies for 1943 and 1944; and (2) that such deficiencies were eliminated by the application of the 1945 carry-back, the Government was entitled to treat the 1943 and 1944 deficiencies as interim figures and was not required to make an assessment of such 1943 and 1944 deficiencies.

The abatement of such deficiencies for the purpose of assessment of such deficiencies did not eliminate the deficiencies for the purpose of assessment of interest on such deficiencies. According to the Government, there having been deficiencies for the years 1943 and 1944, the amounts of money representing such deficiencies remained in plaintiff's pocket instead of having been paid to the Government. Hence, interest on the amounts of such deficiencies ran in favor of the Government from the time such deficiencies should have been paid (i. e., the due dates of the respective returns) until such deficiencies were eliminated as of December 31, 1945, the effective date of the 1945 carry-back.

The deficiency for each of the years 1943 and 1944 was what has been called a "potential deficiency." [10]

That the payment of interest on a deficiency remains an obligation [11] of the taxpayer and survives the abatement of the deficiency itself has become an

9. Cf. Union Telephone Co. v. Commissioner of Internal Revenue, 1940, 41 B.T.A. 152. In ascertaining whether there is a determination of a deficiency or an over-assessment (for the purpose of deciding whether the Board of Tax Appeals has jurisdiction), that Board will look at the net result of the computations of the deficiencies and the over-assessments for the particular year, where the deficiencies and over-assessments arise under the same statute. Thus, where the net result of balancing deficiencies and over-assessments is a net over-assessment and not a net deficiency, the Board of Tax Appeals will dismiss the proceeding for lack of jurisdiction.

10. See United States v. Koppers Company, Inc., 1955, 348 U.S. 254, at page 260, note 9, 75 S.Ct. 268, 99 L.Ed. 302.

11. Cf. Newburgh Land & Dock Co. v. Texas Co., 2 Cir., 227 F.2d 732, 734, where Judge Learned Hand said (in a different context) that "interest is awarded on the theory that it is indemnity for the delay in paying for the loss; * * *."

accepted principle of tax law. Applications of that doctrine are to be found in such recent decisions as United States v. Koppers Company, Inc.,[12] 1955, 348 U.S. 254 [2 cases], 75 S.Ct. 268, 99 L.Ed. 302, reversing 117 F.Supp. 181, 126 Ct. Cl. 847, and affirming United States v. Premier Oil Refining Company of Texas,[13] 5 Cir., 209 F.2d 692; Hastings & Co., Inc., v. Smith,[14] 3 Cir., 1955, 224 F.

12. In United States v. Koppers Company, Inc., the Supreme Court actually considered two refund cases (separately referred to in this opinion as the Koppers case and the Premier Oil Refining case). Both cases involved interest paid on deficiencies in excess profits taxes, which deficiencies were abated under section 722 of the Code. The Court held, in both cases, that the taxpayers were not relieved from the payment of the full amount of the interest charges based upon the full amount of the original deficiencies in such taxes from the original due dates of the taxes abated to the time of the abatements.

In the Koppers case, the taxpayer reported and paid excess profits taxes for 1940 and 1941. In 1943 and 1945, the taxpayer applied for relief under section 722 and signed waivers with respect to assessments. The Commissioner found certain deficiencies and computed interest on the deficiencies. Subsequently, the Commissioner determined that the deficiencies should be "reduced"; and he assessed the "reduced" deficiencies plus interest as provided by law. The taxpayer consented to this assessment. The original deficiencies were treated as deficiencies for the years in question (1940 and 1941) after they had been "determined," but they were "not separately assessed as such," 348 U.S. at page 270, 75 S.Ct. at page 276. The Commissioner assessed the full amount of interest charges "computed on the whole" original deficiencies. The taxpayer claimed refunds of the interest on the amount of the abatements in its excess profits taxes.

The rationale for upholding the interest on the abated deficiency was that, if the taxpayer had paid the proper amount of excess profits taxes when due and before abatement, the Government would have had the use of that money without charge; and correspondingly, the taxpayer would have been without the money during the same period, 348 U.S. at page 262, 75 S.Ct. at page 272. Where the taxpayer retained for its own use the funds constituting the amount of the deficiency, it must compensate the Government for its use of the withheld amount "once the deficiencies have been determined." 348 U.S. at page 263, 75 S.Ct. at page 272.

The Court said, 348 U.S. at page 267, 75 S.Ct. at page 275:

"Where unpaid taxes are abated by reason of § 722, the taxpayer then receives a release from its existing obligation to pay the amount abated. However, the Government having been entitled, up to that time, to collect and use the sum abated, the Government should receive interest, on the abated sum, for the period during which the Government was entitled to have its use."

The Court, 348 U.S. at pages 269–270, 75 S.Ct. at page 276, recognized and approved the administrative policy of the Bureau of Internal Revenue which had been described by a Treasury Department reviewer (and quoted by the Court) as follows:

" 'It is the policy of the Bureau of Internal Revenue in those cases where all or any part of a tax deficiency has been extinguished by application of the relief provisions of Section 722 of the Internal Revenue Code not to assess the extinguished portion of such deficiency. *However, interest has been computed and assessed on the extinguished portion of the deficiency* from the due date of the return to the thirtieth day after the agreement, Form 874, is filed or date of assessment, whichever is the earlier.' (Emphasis supplied.)"

13. In the Premier Oil Refining case, supra, the taxpayer paid excess profits taxes for the years 1943 to 1945. In 1948, certain deductions were disallowed. As a result, there were deficiencies as of the original due dates of the taxes. The taxpayer applied for relief under section 722 and received certain credits which reduced the taxpayer's taxable excess profits as to abate entirely its excess profits tax deficiencies for 1943 and 1944, and to abate that for 1945 to $366.52. The Commissioner did not assess the 1943 and 1944 deficiencies which had been entirely abated. He assessed the 1945 deficiency at $366.52. However, as in the Koppers case, the Commissioner assessed against the taxpayer the full amount of the interest charges based upon the original deficiencies. The taxpayer paid the 1945 deficiency so assessed and the interest so assessed; and then

claimed refunds in a sum representing the interest on the abatements in its excess profits taxes. The claims were disallowed. A refund action was then commenced in the District Court. That Court rendered judgment for the taxpayer, 107 F.Supp. 837, 126 Ct.Cl. 847. The Court of Appeals reversed, 5 Cir., 209 F.2d 692. The Supreme Court granted certiorari, 347 U.S. 987, 74 S.Ct. 851, 98 L.Ed. 1107.

In granting certiorari, the Supreme Court limited the grant to the following question stated in the petition:

" 'Where a deficiency in excess profits tax, based on the income and credits as shown in the taxpayer's return, would have existed except for the subsequent application of Section 722 of the Internal Revenue Code, 26 U.S.C.A. § 722, is the taxpayer liable for interest on the amount of such deficiency (hereinafter called the "potential deficiency") which would have existed had it not been extinguished by the application of Section 722?' " 347 U.S. at page 988, 74 S.Ct. 851.

It may be noted that the element of assessment of the abated deficiency (on which interest was imposed) was not a constituent factor in "the underlying issue" in the Koppers and Premier Oil Refining cases, 348 U.S. at page 260, 75 S. Ct. at page 271.

In United States v. Premier Oil Refining Co., 5 Cir., 1954, 209 F.2d 692, affirmed 1955, 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, sub nom. United States v. Koppers Company, Inc., the Court of Appeals for the 5th Circuit, 209 F.2d 692, at pages 696–697, alluded to the difference between a "determination" and an "assessment" and also explained why an assessment of a deficiency is not necessary (where the deficiency is extinguished or abated) for a valid and separate assessment of interest on the extinguished or abated deficiency.

"Upon this record, we conclude that the District Court erred in holding that the potential deficiencies were never determined although we agree with the trial judge that they were never formally assessed. *However, Section 272(a) does not specifically require a separate formal notice of determination and assessment of an extinguished deficiency.* * * *

"Nor can we construe Section 292 (a), * * * to require with respect to determination and assessment of a deficiency any steps in addition to those set forth in Section 272, as a prerequisite to assessment of interest on that deficiency. Where, as here, there is no necessity for a separate assessment of a deficiency, by reason of its extinguishment by the allowance of Section 722 relief and acceptance of the resulting net overassessment, we do not believe Section 292(a) requires such an assessment of the deficiency as a condition of accrual of liability for interest. Nor is there any suggestion in Section 271(a) of the Code which defines a deficiency, or in Reg. 111, Sec. 292.271–1 implementing this section, that a deficiency need be assessed or even asserted in order for it to be such. We are therefore of opinion that no assessment of the deficiencies here in question was required. Furthermore, it is a well established principle that it is not necessary that a tax be assessed before it can be legally collected * * *." (Emphasis supplied.)

14. In Hastings & Co., Inc., v. Smith, 3 Cir., 1955, 224 F.2d 875, 876, as in the case at bar, the Commissioner of Internal Revenue "assessed interest on certain alleged tax deficiencies" and the taxpayer brought suit to enjoin the district collector from collecting the assessed interest. Because both parties in the case at bar have discussed the Hastings case extensively, it is necessary to consider the facts of that case in some detail.

The years in which the alleged deficiencies occurred were 1948 and 1949. The taxpayer paid (as per its return) the 1948 tax and part of the 1949 tax.

The taxpayer anticipated a net operating loss in 1950 which would, under the carry-back provisions of the Code, reduce or eliminate its tax liability for 1948 and 1949. Further, the taxpayer applied for an extension of time to pay the balance of the 1949 tax and did not pay that balance. The taxpayer also applied, after the close of its 1950 fiscal year, for benefits under the carry-back provisions of the Code in order to take advantage of the 1950 net operating loss. On the basis of the adjusted figures, including the 1950 loss, the taxpayer claimed refunds for the 1948 tax and that portion of the 1949 tax which he had paid. These refund claims were granted and paid.

An official audit of the taxpayer's returns for 1948, 1949 and 1950 showed that the taxpayer's 1948 and 1949 taxable income was substantially greater than had been shown by taxpayer's figures in the original 1948 and 1949 returns, and that the 1950 loss was greater than had been originally claimed by the taxpayer. This 1950 loss, as increased, was sufficient to completely offset the increased taxable income for 1948,

2d 875; and Rodgers v. United States,[15] 1952, 108 F.Supp. 727, 123 Ct.Cl. 779.

 These cases illustrate the following principle: although the deficiency itself has been abated or extinguished by a carry-back from a later year or by relief granted under section 722 of the Internal Revenue Code, the carry-back or relief—in wiping out the debt of the tax deficiency—does not wipe out the interest which has been assessed on that deficiency for a period of time from the date when the original tax should have been properly paid to the date when the deficiency abated in whole or in part. The authoritative exegesis of that doctrine was made by the Supreme Court in Manning v. Seeley Tube & Box Co.,[16]

but it only partially offset the increased taxable income for 1949, for which year, therefore, a tax was due. The agent's figures for 1948 and 1950 were submitted to the taxpayer and approved by it. The taxpayer also executed a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax" for the year 1949, which waiver extended to the 1949 tax due, and proper interest thereon.

In 1951, the Commissioner assessed against the taxpayer a deficiency in income tax for the year 1949, with interest, to which the taxpayer had agreed. This tax, together with interest, was paid and was not an issue.

The Commissioner also assessed against the taxpayer interest on the deficiencies in tax for 1948 and 1949, "which deficiencies had already been 'paid' by the taxpayer, in that they had been wiped out by the carry-back loss from 1950." 224 F.2d 877. It was the assessment of this interest on the 1948 and 1949 deficiencies which was in dispute.

The Court pointed out that there had been a "determination" by the Commissioner of deficiencies, but that the Commissioner was not attempting to assess or collect any deficiency. There, the deficiencies were "cleared up" and there was "absolutely no reason" to assess the deficiencies, especially in view of the fact that the taxpayer "had already consented to the increased tax liability for 1948 and 1949." 224 F.2d at page 879. It was held that *interest* on the deficiencies could be "assessed and collected independently" of the assessment of the deficiencies themselves.

The Court also said, at page 879:

"There can be no doubt that deficiencies were determined and that taxpayer was so notified when he was notified that interest on the deficiencies had been assessed. Once the deficiency was determined, there was no need to comply with the notice provisions of Section 272 (a). That section clearly imposes the notice limitations only if the Commission-er is attempting to collect and assess a deficiency. Here the Commissioner was not attempting to assess or collect any deficiency."

15. In Rodgers v. United States, 1952, 108 F.Supp. 727, 123 Ct.Cl. 779, it was held that a subsequent cancellation of the duty to pay the tax deficiency did not cancel in like manner the duty to pay the interest on that deficiency from the time the original tax became due until the time the deficiency was extinguished by carry-back of a net operating loss. The Court said, 108 F.Supp. at page 729:

"Section 272(a) did not specifically require a separate formal notice of determination and assessment of an extinguished deficiency after application of the carry-back."

16. In Manning v. Seeley Tube & Box Co., 1950, 338 U.S. 561, 70 S.Ct. 386, 94 L. Ed. 346, the abatement of the deficiency was effected by the carry-back provisions of the Internal Revenue Code. The Supreme Court, in the Koppers case, 348 U.S. at page 270, 75 S.Ct. at page 276, expressed the view that its decision in the Manning case was "thoroughly consistent in principle" with its decision in the Koppers case, where the abatement of the deficiency was effected by relief granted under section 722 of the Code, as distinguished from carry-backs.

The Manning case involved an action for refund of an amount withheld as interest on a tax deficiency which had been abated. The taxpayer had filed a tax return on December 15, 1941 for its fiscal period, January 1, 1941 to September 30, 1941. When, in July 1943, the taxpayer became bankrupt, the Commissioner (on August 21, 1943) assessed deficiencies in the 1941 taxes with interest from the date the tax was properly due to the assessment date. On March 3, 1944, the taxpayer filed its return for the fiscal period from October 1, 1942 to September 30, 1943, showing a net operating loss for that year. This loss, when duly carried back, was sufficient to abate completely the taxpayer's tax lia-

1950, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346, reversing, 3 Cir., 172 F.2d 77.

In the case at bar, the last waiver executed by plaintiff with respect to the 1943 return expired on June 30, 1954, and the assessment of interest on the 1943 deficiency was made on June 29, 1954. The last waiver with respect to the 1944 return expired on December 31, 1954, and the assessment of interest on the 1944 deficiency was made on November 24, 1954.

At no time during the statutory period, as extended by the waivers, did defendant send to plaintiff a notice stating that he had determined that there were excess profits tax deficiencies for 1943 and 1944, and that such deficiencies were assessed. It follows that, by expiration of the statutory period, defendant is now barred from making any assessment for the alleged 1943 and 1944 deficiencies, were he otherwise required to do so.

The granting of this motion to dismiss the complaint accomplishes substantial justice, for it means that, after plaintiff pays the assessments for interest on the deficiencies, it can still have its day in court by bringing a refund action, in which it can litigate the correctness of the deficiency interest assessments and, also, as a necessary incident thereof, the correctness of defendant's determination of the amount of the 1943 and 1944 deficiencies upon which such interest was computed.

"In the absence of a clear legislative expression to the contrary,"[17] and under the circumstances of this case, I shall adopt such interpretation of the statute as will accomplish the two-fold objective of: (1) affording the taxpayer an opportunity to obtain a judicial determination of the merits of the interest assessments,[18] and (2) avoiding a nullification of the Government's claim for such interest on points that do not reach the underlying factual merits of such assessments.[19]

bility for 1941. The Commissioner abated the deficiency, but retained an amount equal to the interest which had been assessed on the deficiency.

It will be noted that the net operating loss for the period from October 1, 1942 to September 30, 1943—the basis for the carry-back—was disclosed in the return filed on March 3, 1944, *after* the Commissioner (on August 2, 1943) had assessed deficiencies and interest thereon. But nowhere in its elaborate opinion does the Court intimate that the assessment of the deficiency is a universal *sine qua non* condition to the assessment and collection of interest on that deficiency when that deficiency shall have been abated.

The Court expounded the basic statutory policy and Congressional intent requiring "prompt payment of taxes properly due", 338 U.S. at pages 566–567, 70 S.Ct. at page 390, so that "the United States" may "have the possession and use of the lawful tax at the date it is properly due." 338 U.S. at page 568, 70 S.Ct. at page 390. From this it follows that, when the taxpayer failed to pay the taxes owed, the taxpayer "had the use of funds which rightfully should have been in the possession of the United States", 338 U.S. at page 566, 70 S.Ct. at page 389; and, therefore, interest is payable for "the interim use of the tax payments." 338 U.S. at page 569, 70 S. Ct. at page 391.

The Court's position was summarized in the following words, 338 U.S. at page 566, 70 S.Ct. at page 389:

"The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government."

17. Manning v. Seeley Tube & Box Co., 1950, 338 U.S. 561, at page 566, 70 S. Ct. 386, 389, 94 L.Ed. 346, quoted with approval in United States v. Koppers Company, Inc., 1955, 348 U.S. 254, at page 270, 75 S.Ct. 268, at page 276, 99 L. Ed. 302.

18. As in a refund action. e. g., Rodgers v. United States, supra, note 15; United States v. Koppers Company, Inc., supra.

19. Cf. the reasoning of Chief Circuit Judge Clark in National Foundry Co. of New York, Inc., v. Director of Internal Revenue, 2 Cir., 229 F.2d 149.

The second prayer for relief of the complaint, as noted, asks for a declaratory judgment that plaintiff is not indebted in any amount for interest on the excess profits tax for the years 1943 and 1944, and that defendant's assessments of interest on alleged deficiencies for those years are invalid.

A declaratory judgment may not be had in a case of a controversy "with respect to Federal taxes." Title 28, U.S. C.A. § 2201. Upon the oral argument of this motion, plaintiff withdrew its prayer for a declaratory judgment. Plaintiff's memorandum states: "If the merits of the alleged deficiencies are not to be determined in this proceeding, plaintiff has no objection to the dismissal of its second prayer for relief."

Accordingly, the motion to dismiss the complaint is granted solely on the ground that there is lack of jurisdiction over the subject-matter.

Settle order on notice.